STATE OF NEBRASKA, APPELLEE,. V.
JEFFREY R. BENZEL, APPELLANT.
689 N.W.2d 852

Filed December 23, 2004.    No. S-02-1492.

James R. Mowbray and Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Jeffrey R. Benzel, pro se.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and INBODY and MOORE, Judges.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Jeffrey R. Benzel was convicted by a jury in 1984 of the first degree murder of Terry Atkinson, the attempted first degree murder of Kim Christensen, use of a firearm to commit a felony, and possession of a firearm by a felon. Although we reversed for resentencing, Benzel's convictions were otherwise affirmed on appeal to this court. *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985), *overruled on other grounds, State v. Kuehn*, 258 Neb. 558, 604 N.W.2d 420 (2000). After an evidentiary hearing, the district court for Hall County denied Benzel's motion for post-conviction relief on December 4, 2002. Benzel appeals.

## II. STATEMENT OF FACTS

The facts of the underlying case were described in this court's opinion in the direct appeal as follows:

> The evidence reveals the defendant admitted shooting the decedent, Terry Atkinson, with a .357 Magnum on December 12, 1983. According to Lorene Golle, the defendant's girl friend, she, the defendant, and a friend had gone to the Atkinson-Christensen house on December [12] to purchase drugs. Prior to going, Lorene informed the defendant she had already paid Kim Christensen, the decedent's girl friend, for the drugs the preceding Friday night, December 9, although

she admitted in court she actually had not. En route to the house on December 12, the defendant told Lorene, "If I don't get what we came here for, someone's going to get dropped."

When Lorene and the defendant entered the house, Lorene asked to use the bathroom and borrow a brush. Kim showed her to the bathroom and asked what had happened to Lorene, as she appeared to have been beaten around the face. Kim left the bathroom as the defendant approached, wanting to talk to Lorene. The defendant entered, shut the door, and then Kim heard "a racket" in the bathroom, with Lorene shouting and some banging against the walls.

Terry came from the living room and twice told Lorene and the defendant to leave. The defendant grabbed Lorene and started pushing her toward the front door. Before pushing Lorene out, the defendant said he wanted to talk to Kim about being paid for the drugs. After Lorene left, Kim testified the defendant turned, grabbed her, and pointed a gun at her head, which prompted Terry to go to his bedroom where he kept a shotgun. The defendant followed and tried to kick the bedroom door in. When he could not, he returned to the living room, again grabbed Kim and put the gun to her head. He then told her, "Do you want to see something go on here? Do you want to see something happen, huh?" and then, "Better yet," and pointed the gun straight out in the direction of the bedroom, and said, "If your old man comes out and does what I think he's doing, he's going to be a dead man." As the decedent returned from the bedroom, defendant shot him in the mouth, and the victim fell to the floor.

The defendant then stood 5 or 6 feet from Kim, with his legs spread and both hands on the gun straight out "like that," as she crouched by the living room sofa. She heard the gun click and saw it (the cylinder) go around. She heard three more clicks and saw the defendant "looking at the gun like this," and then he ran from the house.

The defendant claims that only after the decedent returned to the living room with the shotgun leveled at him did he pull his gun and shoot the decedent in self-defense.

*State v. Benzel*, 220 Neb. 466, 468-70, 370 N.W.2d 501, 506 (1985).

At trial, Benzel denied having put a gun to Christensen's head or attempting to shoot her. Benzel also testified that at the time he shot Atkinson, Benzel was standing near the front door on his way out of the house rather than sitting next to Christensen on the sofa, as Christensen had testified. On direct appeal, Benzel raised issues regarding sufficiency of the evidence, jury selection, prosecutorial misconduct, and sentencing. This court rejected most of Benzel's arguments and affirmed his convictions but vacated his sentence on the attempted murder count and remanded the cause for resentencing on that count.

Benzel filed a motion for postconviction relief on September 3, 1993. Benzel subsequently made various amendments to the motion, and a hearing was held and evidence adduced on Benzel's third amended motion on September 27 and 28, 2001, and April 2, 2002. During the postconviction hearing, leave was granted for Benzel to further amend his motion. Benzel's fourth amended motion for postconviction relief, the operative motion in this case, was filed November 18, 2002. In the motion, Benzel made various claims of ineffective assistance of counsel at trial and on direct appeal, including: failure to investigate, consult with, retain, and utilize expert testimony; failure with respect to various jury instructions; failure to challenge various evidentiary rulings; failure to challenge prosecutorial misconduct; failure to challenge the credibility of various witnesses for the prosecution; and failure to challenge errors in the sentence enhancement proceedings.

At the postconviction evidentiary hearing, Benzel presented testimony of witnesses to support his assertion that trial counsel failed to properly investigate and use expert testimony. Dr. Robert Bux, a medical examiner, testified that he had reviewed the autopsy report, autopsy photographs, and relevant portions of the testimony and evidence from the original trial. Based on this review, he opined that the bullet traveled through Atkinson's head from front to back, going slightly right to left and slightly downward. Bux also opined that at the time Benzel shot Atkinson, Benzel was standing, which was consistent with Benzel's testimony at trial, rather than sitting, as Christensen had testified. However, Bux also testified that there were various additional questions he would have wanted answered by the witnesses in order to determine what occurred and that he did not know various

factors which might have been relevant to such a determination, including the location and position of Atkinson's body, the dimensions of the room, and where bullet fragments were found. Bux conceded on cross-examination that if more information were developed, his opinion might change.

Following Bux's testimony, the State called Dr. Jerry Jones, a pathologist, as a witness. Jones testified that he also had reviewed the autopsy report and relevant evidence and testimony from the trial. Contrary to Bux's testimony, Jones opined that the evidence was consistent with Christensen's testimony and was inconsistent with Benzel's testimony. Jones also testified that the person in the best position to opine on the bullet trajectory would be the pathologist who directly observed the angles at autopsy and that an opinion formed without such observation involves speculation. Jones noted that the pathologist who performed the autopsy had died before the original trial.

Benzel presented testimony regarding the gun he had used to shoot Atkinson. Benzel testified at trial and at the postconviction hearing that he had disposed of the gun shortly after the shooting. The gun had not been recovered by the time of the postconviction hearing. In the postconviction proceeding, Benzel presented the deposition of Lucien Haag, a criminalist. Haag had reviewed various documents and materials from the trial, including depositions, testimony, police reports, photographs, and physical evidence. Haag testified regarding various examinations he would have conducted upon the gun used by Benzel if it had been recovered. He stated that such tests could have provided information relevant to the case, including information either supporting or refuting Christensen's assertion that the gun had misfired when Benzel attempted to shoot her after the gun had properly fired when Benzel shot Atkinson. Haag also noted that the examination of additional ammunition to determine if it was degraded would be helpful. Without having examined the gun, he opined that assuming the gun were fully loaded, it was very unlikely to have several misfires following a successful fire. Haag was asked, "Now, can you tell me without an examination of the gun itself, and maybe perhaps the cartridges of the gun, can an opinion be stated within a reasonable degree of certainty that a revolver misfired?" Haag replied, "No, no."

At the postconviction hearing, the State presented the testimony of Mark Bohaty, a State Patrol officer assigned to firearms examinations. Bohaty had reviewed Haag's deposition and the testimony of various trial witnesses. Bohaty opined that it was possible that Benzel's gun could have had several misfires following a single successful firing, as Christensen had testified at trial. He described a number of reasons that such an event could have occurred. At Benzel's original trial, another State Patrol firearms examiner had given similar testimony regarding how a gun might misfire after a successful fire.

Benzel also presented the postconviction testimony of a private investigator who testified regarding investigative work that was not done that he believed would have been helpful in Benzel's case. Benzel's original trial counsel and Benzel himself also testified at the postconviction hearing regarding the manner in which trial counsel conducted Benzel's defense.

The State presented testimony at the postconviction hearing in addition to the testimony of Jones and Bohaty. Bradley Brush, a Grand Island police officer who investigated the shooting in 1983, testified regarding the investigation that was undertaken at that time. Brush's investigation included the observation of scarring on the ceiling tile of the Atkinson-Christensen house and debris from the scarring which had fallen on the kitchen counter. Brush also testified that within the year preceding the postconviction hearing, he had returned to the house where the shooting had occurred to take a measurement of the ceiling height and to retrieve material from the ceiling tile. A forensic chemist testified that material found on a bullet recovered from the scene of the shooting matched material taken from the kitchen ceiling.

Following the evidentiary hearings, the parties submitted briefs to the district court. On December 4, 2002, the court entered an 85-page opinion and order rejecting Benzel's claims and denying postconviction relief. The court made various findings in rejecting Benzel's claims. These included a finding that the physical evidence did not support Benzel's description of the shooting and was consistent with Christensen's testimony. The court also noted that the gun Benzel used to shoot Atkinson had not been retrieved and that Benzel's expert at postconviction stated that it would have been important to examine the gun before being able to

opine whether the condition of the gun supported the testimony of either Benzel or Christensen. The court concluded that, even assuming that trial counsel's failure to investigate and present expert testimony was deficient performance, Benzel had not shown prejudice caused by such failure because he failed to demonstrate a reasonable probability that the result of the trial would have been different had such testimony been presented. The court rejected each of Benzel's claims relating to jury instructions because either the instructions given were correct statements of law or Benzel had not shown prejudice caused by the giving or the omission of any instruction. The court rejected each of Benzel's claims relating to evidentiary issues because either the evidentiary ruling was correct or Benzel failed to show prejudice caused by admission of the evidence. The court rejected Benzel's claims relating to prosecutorial misconduct and examination of prosecution witnesses because Benzel failed to show prejudice resulting from these events or counsel's alleged deficiencies. Finally, the court concluded that Benzel could not properly challenge his prior convictions in the sentence enhancement proceeding. Having rejected Benzel's claims, the court denied postconviction relief. Benzel appeals the denial.

## III. ASSIGNMENTS OF ERROR

In a brief prepared by counsel, Benzel asserts that the district court erred in denying postconviction relief and failing to find that trial and direct appeal counsel had provided ineffective assistance in the following respects: (1) failing to "investigate, consult with, retain, and utilize expert testimony"; (2) failing to ensure that the jury was properly instructed; (3) failing to challenge certain evidentiary rulings; (4) failing to challenge prosecutorial misconduct; and (5) failing to challenge the credibility of key prosecution witnesses.

In a supplemental pro se brief, Benzel asserts that the district court erred in (1) ruling that Benzel could not challenge the constitutionality of prior convictions used in the sentence enhancement phase of the trial and failing to consider Benzel's challenges to such prior convictions, (2) failing to find that trial counsel provided ineffective assistance by failing to challenge prior convictions used in sentence enhancement, and (3) failing

to find that trial counsel provided ineffective assistance in examining witnesses.

## IV. STANDARDS OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

■ Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004).

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Most of Benzel's assignments of error relate to the district court's rejection of his various claims of ineffective assistance of counsel. We will therefore first set forth the standards regarding claims of ineffective assistance of counsel which are applicable to all such assignments of error and then separately analyze each of Benzel's claims.

■ In order to establish a right to postconviction relief based on a claim of ineffective counsel, the defendant has the burden to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. The defendant must also show that counsel's deficient performance prejudiced the defense in his or her case. *McHenry, supra*. The two prongs of this test,

deficient performance and prejudice, may be addressed in either order. *Id.*

In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* In determining whether trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id.*

### (a) Failure to Investigate and to Utilize Expert Testimony

Benzel's first claim of ineffective assistance of counsel is that trial counsel failed to adequately investigate in order to develop and utilize expert testimony that would have been helpful to his defense. We agree with the district court's determination that Benzel has failed to establish prejudice with respect to this claim.

Benzel's main argument with respect to expert testimony is that counsel could have presented expert testimony that would have supported his version of the events surrounding his shooting of Atkinson and would have discredited Christensen's testimony regarding such events. Both Christensen and Benzel testified at trial, and although their stories were similar in certain respects, they differed in respects that were potentially relevant to whether Benzel was acting in self-defense and whether Benzel attempted to shoot Christensen. In summary, Christensen testified that Benzel was seated next to her on the living room couch when he shot Atkinson, who was standing in the bedroom door. In contrast, Benzel testified that he was heading toward the front door to leave the house when Atkinson raised his shotgun to his shoulder and that Benzel thereafter shot Atkinson. Christensen testified that after Benzel shot Atkinson, he turned the gun on her and tried to shoot her but that the gun did not fire. Benzel denied attempting to shoot Christensen.

At the postconviction hearing, Benzel presented expert testimony referred to above which, he asserted, supported his story and disproved Christensen's story. Such testimony concerned, inter alia, the trajectory of the bullet that killed Atkinson and the

functioning of the gun. Benzel asserted that trial counsel was ineffective for having failed to adequately investigate and discover such expert evidence and for having failed to present it at trial.

The district court determined that Benzel failed to show that he was prejudiced by trial counsel's purported failure to discover and present such expert testimony. After hearing the evidence, the court discounted the reliability of the expert evidence Benzel presented at the postconviction hearing. The court noted that the opinion of Benzel's expert pathologist regarding the trajectory of the bullet was based solely on a review of autopsy reports and photographs and testimony presented at the original trial and that the expert relied on his own speculation rather than the findings of the pathologist who conducted the autopsy. The court also noted that Benzel's expert testified only that the misfiring of the gun when Benzel allegedly attempted to shoot Christensen was "highly improbable." The expert conceded that the gun itself would need to be examined to better support either version of events, but Benzel had disposed of the gun after the shooting and it had never been found. The court further noted that the State presented expert testimony at the postconviction hearing regarding bullet trajectory which supported Christensen's story and contradicted Benzel's and that both at trial and at the postconviction hearing, the State presented expert testimony that various circumstances could have caused the gun to misfire as Christensen had described. The court noted the "powerful and overwhelming evidence of [Benzel's] guilt" that was presented at trial and concluded that Benzel had failed to show prejudice due to trial counsel's purported failure to develop and present expert testimony.

■ Benzel argues, inter alia, that it was not appropriate for the district court to weigh the credibility of the expert testimony he presented in the postconviction hearing, that instead the court should have decided that such evidence should be presented to a jury in a new trial, and that the jury should have been allowed to give whatever weight it chose to the testimony. However, we have held that in an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony. *State v. McDermott*, 267 Neb. 761, 677 N.W.2d 156 (2004). Therefore, it was not

inappropriate for the district court to assess the credibility and weight of the expert testimony presented in this postconviction evidentiary hearing. Furthermore, the district court considered such testimony in the context of determining whether failure to develop such testimony and present such evidence constituted ineffective assistance of counsel. A defendant claiming ineffective counsel must demonstrate, inter alia, a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004). The district court in this case examined the expert testimony presented by Benzel in the postconviction evidentiary hearing and appropriately determined that the expert testimony was not of a nature that would have caused a different result. We find no error in the district court's determination that Benzel failed to establish prejudice resulting from trial counsel's failure to develop and present such evidence, and we therefore reject this claim of ineffective assistance of counsel.

### (b) Failure to Ensure That Jury Was Properly Instructed

Benzel asserts that the district court erred in rejecting his claims that trial counsel was ineffective for failing to properly challenge certain jury instructions and for failing to ensure that other instructions were given. Specifically, Benzel asserts that the trial court gave erroneous jury instructions regarding self-defense, malice, and flight, as well as an erroneous step instruction. He also asserts that the trial court failed to charge the jury regarding criminal intent. We conclude that the district court in this postconviction action did not err in rejecting Benzel's claims of ineffective counsel because either the instructions given were correct statements of law or the giving or failure to give the instructions at issue did not prejudice Benzel's defense.

### (i) Self-Defense Instruction

Benzel argued that the self-defense instruction given at trial was erroneous because it did not instruct on when the duty to retreat attaches and because it did not define the phrase "deadly force." The district court in this postconviction action noted that the self-defense instruction given at trial mirrored the language of NJI Crim. 14.33 in effect at the time of the trial. The court concluded

that the instruction correctly stated the law with respect to the duty to retreat. The court further determined that the omission of a definition of "deadly force" was not prejudicial to Benzel because the jury obviously did not believe Benzel's story about self-defense.

### (ii) Malice Instruction

Benzel argued that instruction No. 7 defining "malice" was erroneous because it used a definition no longer used by Nebraska courts. He also argued that the trial court erred in failing to include malice as an element of second degree murder. The district court in this postconviction action concluded that although the definition of "malice" given by the trial court was no longer included in the current pattern jury instruction, the previous version of the instruction had not been held to be incorrect and that the definition given at trial was a correct statement of law. The court also noted that because Benzel was convicted of first degree murder, it could be assumed the jury followed the step instruction and did not consider the charge of second degree murder, and that therefore, any misstatement regarding the second degree murder instruction was not prejudicial to Benzel. The court similarly rejected Benzel's claims regarding error in the manslaughter instruction because it could be assumed that the jury did not consider the charge of manslaughter.

### (iii) Flight Instruction

Benzel argued that the trial court improperly instructed the jury on flight because the instruction improperly shifted the burden to Benzel to explain his reasons for departure. The postconviction court rejected Benzel's claim because the instruction given at trial was a correct statement of law.

### (iv) Step Instruction

Benzel argued that the trial court erred in giving a step instruction on first degree murder, second degree murder, and manslaughter because the jury should have been allowed to consider the lesser offenses before rejecting the charge of first degree murder. The postconviction court concluded that the step instruction as given was not erroneous and cited recent cases including *State v. Myers*, 258 Neb. 300, 315, 603 N.W.2d 378, 390 (1999), in which we stated, "Step instructions which require consideration

of the most serious crime charged before consideration of lesser-included offenses are not erroneous."

### (v) Criminal Intent Instruction

Benzel asserts that the trial court erred in failing to give NJI Crim. 14.11 or a similar instruction on criminal intent. The post-conviction court determined that the failure to instruct on criminal intent was not prejudicial to Benzel, because Benzel's defense was that his shooting of Atkinson was intentional but justified as self-defense and Benzel had not asserted at trial or on appeal that the shooting was not intentional.

### (vi) Resolution

We have examined each of Benzel's arguments related to jury instructions and determine that the district court did not err in ruling that Benzel has failed to establish his claims of ineffective assistance of counsel with respect to these jury instruction issues. Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading. *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004). In this regard, we note that we have stated that a defendant convicted of first degree murder could not have been prejudiced by error in the instructions on second degree murder and manslaughter because under a step instruction, the jury would not have reached the issues of second degree murder and manslaughter. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002). We agree with the district court's determinations that certain of the jury instructions questioned by Benzel correctly stated the law and were not misleading and that therefore trial counsel was not ineffective for failing to object to such instructions. We also agree that Benzel has not established that he was prejudiced by the giving or failure to give any of the questioned jury instructions. The district court therefore did not err in rejecting these claims of ineffective assistance of counsel.

### (c) Failure to Challenge Evidentiary Rulings

Benzel asserts that the district court erred in rejecting his claims that trial counsel provided ineffective assistance by failing to properly challenge various evidentiary rulings. Such evidentiary rulings related to the testimony of (1) Francis Fastenau, a neighbor of

Atkinson and Christensen; (2) Benzel's girl friend, Lorene Golle, regarding her broken ribs; (3) police Capt. Gene Watson, regarding statements made by Benzel's friend, Joe McCarthy; and (4) State Patrol Investigator Chris Blubaugh, regarding Golle's veracity as an informant.

### (i) Francis Fastenau

After Benzel left the Atkinson-Christensen house, Christensen ran to Fastenau's house. At Fastenau's house, Christensen placed a 911 emergency dispatch call. Fastenau was called to testify and was asked to recount what Christensen had said on the 911 call. Fastenau testified that Christensen told the 911 operator that Benzel had put a gun to her head and had attempted to shoot her. Benzel claimed during postconviction proceedings that a tape recording of the 911 call revealed that Christensen did not say this.

Benzel argued that counsel was ineffective for failing to assign error on appeal to the trial court's overruling of Benzel's hearsay objection to Fastenau's testimony. He also argued that counsel should have objected on a "best evidence" basis because the 911 tape was the best evidence of what Christensen said to the 911 operator. The postconviction court concluded that Fastenau's testimony was admissible because Christensen's statement to Fastenau was an excited utterance. Although it concluded that the trial court had erred by giving an erroneous limiting instruction to the jury in which it stated that the testimony could be used only for the purpose of supporting Christensen's testimony, the postconviction court found no prejudice to Benzel from the erroneous limiting instruction because it benefited Benzel, presumably because the jury was instructed to not consider Fastenau's testimony as substantive proof that Benzel had done what Christensen said he had done. The postconviction court also concluded that the best evidence rule was inapplicable to Fastenau's testimony because the State was not attempting to prove the contents of the 911 tape but instead was attempting to prove what Christensen had said to Fastenau.

### (ii) Lorene Golle

Benzel argued that trial counsel was ineffective for failing to object to certain testimony given by Benzel's girl friend, Golle. At one point during her testimony, Golle was asked a question

about Benzel's consumption of alcohol on the night of the shooting. After responding to the question, Golle added, "My ribs were broke so I wanted to drink." Benzel argued that trial counsel should have objected to this testimony as prior bad act evidence because it characterized Benzel as a violent person. See Neb. Rev. Stat. § 27-404(2) (Reissue 1995). The postconviction court determined that Benzel failed to show how this testimony was prejudicial to him. We agree that the testimony was not prejudicial to Benzel and further that such testimony was not "prior bad act evidence" because, although Golle said that her ribs were broken, she did not state that Benzel had broken her ribs.

### (iii) Capt. Gene Watson

Benzel claimed trial counsel was ineffective for failing to object to certain testimony by a police officer regarding statements made by a friend of Benzel's, McCarthy, who was with Benzel and Golle when they went to the Atkinson-Christensen house. McCarthy waited in the car when Benzel and Golle went into the house. Watson, of the Grand Island Police Department, testified at trial that he talked to McCarthy a few hours after the shooting and that when he asked McCarthy whose idea it was to go to the house, McCarthy said that it was Benzel's idea. McCarthy testified at trial that he had no recollection regarding whose idea it was to go to the house. Benzel argued that a limiting instruction should have been given in connection with Watson's testimony and that the jury should have been instructed to use such testimony only to impeach McCarthy. He also argued that in its closing argument, the prosecution urged the jury to use Watson's testimony as substantive evidence that it was Benzel's idea to go to the house. In analyzing Benzel's assignment of error relative to the admission of Watson's testimony, we are aware that ordinarily, the erroneous admission of evidence in a criminal case is considered prejudicial unless the State proves the error was harmless. See *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003). Further, as we read the district court's order, it appears that the postconviction court was aware of this principle as it considered Benzel's assignment of error relative to the admission of evidence as it pertained to the adequacy of counsel. The postconviction court concluded that although the admission of Watson's

testimony may have been erroneous, Benzel failed to show prejudice because the evidence against Benzel was so compelling that a conviction would have resulted even without the testimony.

### (iv) State Patrol Investigator Chris Blubaugh

Benzel claimed that direct appeal counsel provided ineffective assistance by failing to appeal the trial court's sustaining the State's objection to certain testimony Benzel wished to elicit from Blubaugh, a State Patrol investigator. Blubaugh testified that Golle had contacted him after being jailed in connection with the Atkinson shooting incident and that she sought to gain release from jail in exchange for providing information. He testified that he had known Golle for a few years prior to the shooting and that contacts during that time involved Golle's exchanging information for help with her legal problems. On cross-examination, defense counsel attempted to ask Blubaugh whether Golle made a "habit" of contacting the authorities to try to help her get out of trouble. The trial court upheld the State's objection. The postconviction court concluded that Benzel failed to show prejudice because he failed to establish what Blubaugh would have testified and how such testimony would have helped his defense.

### (v) Resolution

We agree with the district court's determination that with respect to each of these issues, Benzel failed to show prejudice from counsel's alleged deficient performance and that with respect to Golle's testimony regarding her broken ribs, such testimony was not "prior bad act evidence." We therefore conclude that the district court did not err in rejecting these claims of ineffective assistance of trial and appellate counsel.

### (d) Failure to Challenge Prosecutorial Misconduct

Benzel asserts that the district court erred in rejecting his claims that counsel provided ineffective assistance by failing to effectively challenge various instances of prosecutorial misconduct. The alleged prosecutorial misconduct included (1) making inappropriate statements during closing argument, (2) eliciting McCarthy's testimony for the sole purpose of later discrediting it, and (3) making inappropriate remarks during its opening statement.

### (i) Closing Argument

Benzel asserted that in closing argument, the prosecutor made various expressions of personal opinion. He argues that such statements included an inappropriate "expert" opinion to the effect that Atkinson's teeth deflected the bullet and changed its path. The postconviction court concluded that Benzel failed to show prejudice because the prosecutor's closing argument did not unduly mislead or influence the jury. The court noted that the prosecutor prefaced his remarks by stating that such remarks were not evidence and need not be accepted by the jury if they were not supported by the evidence.

### (ii) Joe McCarthy's Testimony

At trial, the prosecution elicited testimony from McCarthy to the effect that it was Golle's idea to go to the Atkinson-Christensen house. Benzel asserted that the prosecution's sole purpose in eliciting this testimony was to later impeach McCarthy with Watson's testimony that McCarthy told Watson that it was Benzel's idea to go to the Atkinson-Christensen house. Benzel argued that this sequence amounted to prosecutorial misconduct. Similar to its determination with respect to counsel's purported failure to challenge the evidentiary ruling on Watson's testimony, the postconviction court determined that Benzel failed to show prejudice because the evidence against Benzel was so compelling that conviction would have resulted even without the testimony that it was Benzel's idea to go to the house.

### (iii) Opening Statement

In its opening statement, the State said that "there are some witnesses that will be presented that have had an opportunity to talk to . . . Benzel. Close, personal friends of him [sic] have talked to him since the incident and so forth." Benzel argued that this statement was an inappropriate remark suggesting that McCarthy and Golle had contrived with Benzel in preparing his defense. Benzel also asserted that the prosecution made statements to the effect that Benzel had been to the Atkinson-Christensen house before the night of the shooting but that such statements were contrary to the evidence. At the close of the State's evidence, defense counsel moved for mistrial based on the prosecutor's opening statement. The motion was overruled, and the issue was

not raised on appeal. Benzel argued that appellate counsel was ineffective for failing to raise the issue on appeal. The postconviction court concluded that Benzel failed to show prejudice in light of the fact that prior to opening statements, the court had instructed the jury that comments made in opening statements were not to be considered as evidence.

### (iv) Resolution

We agree with the district court's rulings with respect to each of these issues, including the ruling that Benzel failed to establish prejudice from counsel's alleged deficient performance. We therefore conclude that the district court did not err in rejecting these claims of ineffective assistance of trial and appellate counsel.

### (e) Failure to Challenge Credibility of Key Witnesses

Benzel asserts that the district court erred in rejecting his claims that trial counsel provided ineffective assistance by failing to properly challenge the testimony of key prosecution witnesses including Christensen, Golle, and McCarthy. Benzel asserts, inter alia, (1) that the audiotape of Christensen's 911 call should have been used to confront Christensen with the fact that during the call she did not make the statements that Fastenau claimed to have heard, (2) that Christensen should have been asked questions about Atkinson's behavior before the shooting which Benzel asserts would have shown that Atkinson was the aggressor, and (3) that other evidence could have been used to discredit certain testimony by Golle and by McCarthy. The district court in this postconviction action generally determined that counsel made reasonable tactical and strategic decisions to not pursue the lines of questioning suggested by Benzel and noted that such questioning may have led to information adverse to Benzel.

In determining whether trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably. See *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004). When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id.* The district court did not err in its determination that trial counsel made reasonable strategic decisions to not pursue the lines of questioning suggested by Benzel in this

postconviction proceeding. We therefore conclude that the district court did not err in rejecting these claims of ineffective assistance of counsel.

### 2. USE OF PRIOR CONVICTION TO ENHANCE SENTENCE

Benzel asserts various challenges to a prior conviction which was used to enhance his sentence in the present case and argues that trial counsel did not effectively challenge use of the prior conviction in the sentence enhancement proceeding. The district court noted that because the record established that Benzel was represented by counsel at the time of the prior conviction, the conviction was not subject to challenge in the sentence enhancement proceeding. The court further noted that trial counsel had attempted unsuccessfully to challenge use of the prior conviction at the enhancement proceeding and had unsuccessfully raised the issue in the direct appeal.

A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Perry*, 268 Neb. 179, 681 N.W.2d 729 (2004). Issues regarding the use of prior convictions were previously litigated and decided in favor of the State in Benzel's direct appeal wherein we stated that any objections to the validity of prior convictions, other than effective assistance of counsel or waiver thereof, should have been raised in the direct appeal of such prior convictions. See *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985), *overruled on other grounds, State v. Kuehn*, 258 Neb. 558, 604 N.W.2d 420 (2000).

In the present appeal, Benzel makes various arguments regarding the validity of a prior conviction, including an argument regarding the constitutionality of the statute which formed the basis of his prior conviction. To the extent that Benzel's arguments in this proceeding are the same as those he presented in his direct appeal, the present postconviction action cannot be used to secure an additional review of the same issues. See *Perry, supra.* To the extent Benzel's arguments raise new issues regarding the validity of his prior conviction, our statement in the direct appeal, that objections to the validity of prior convictions are to be raised in the direct appeal of such prior convictions, applies equally to such new arguments. See *Benzel, supra.* Therefore Benzel could

not properly have used such arguments to challenge his prior conviction in the sentence enhancement proceeding and because such challenges would have been inappropriate, counsel was not ineffective for any failure to raise such challenges. The district court in this postconviction action did not err in rejecting Benzel's claims regarding use of the prior conviction to enhance his sentence and counsel's purported failure to challenge such use.

## VI. CONCLUSION

The district court did not err in rejecting Benzel's postconviction claims of ineffective assistance of counsel and his claims relating to the validity of a prior conviction used to enhance his sentence. We therefore affirm the district court's order denying Benzel's motion for postconviction relief.

AFFIRMED.

CONNOLLY and STEPHAN, JJ., not participating.