276 Neb. 7
STATE OF NEBRASKA, APPELLEE,
v.
CHRISTOPHER E. BAZER, APPELLANT.
No. S-07-316.
Supreme Court of Nebraska.
Filed July 3, 2008.
Brian S. Munnelly for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Christopher E. Bazer appeals the dismissal of his motion for postconviction relief from his conviction, pursuant to a plea agreement, of first degree felony murder. Bazer argues that his guilty plea was compelled by his counsel's unreasonable trial strategy. He further argues that his plea was involuntary because the trial court failed to advise him of his right against selfincrimination. We affirm.

BACKGROUND

TRIAL RECORD: PRETRIAL DISCOVERY
On March 1, 1988, Bazer was charged with one count of first degree felony murder and one count of use of a firearm to commit a felony, in connection with the death of Mary G. Jirsak. There was no dispute from the evidence procured during pretrial discovery that Bazer had, either intentionally or accidentally, shot and killed Jirsak after robbing her candy store. There was some dispute as to the extent of Bazer's intoxication at the time of the robbery and shooting. Bazer was 19 years old at the time of the shooting.
Dale Lee Demont testified in his deposition that he had driven the getaway car the day of the robbery. Demont stated that on the morning of February 18, 1988, he picked up Bazer and their friend, Phillip Bowen, and that Bowen told him to "`Head down toward 13th Street." The candy store was located on 13th Street in Omaha, Nebraska. When they got there, Bowen and Bazer told Demont to wait in the car while they went to rob someone. Bowen and Bazer explained to Demont that they needed money to get out of town. Demont testified that when Bowen and Bazer returned to the vehicle, Bazer told him that they had robbed a woman and that when she ran for the door, Bazer grabbed her by the hair and shot her. Demont stated that while driving, he saw Bazer pull a gun out of his waistband and place it briefly on the seat next to Demont. Bazer eventually directed him to take them to Vicky Strunk's house.
Vicky testified in her deposition that Bazer and Bowen had stayed at her house the night before the robbery. At approximately 11 a.m., on February 18, 1988, Bazer woke her up and told her something about a woman running out the door and that he had pulled her by the hair and shot her. According to police reports, Vicky's husband, Gary Strunk, was also present at the house that morning. Gary gave a taped statement to the police in which he described how Bazer had told him that Bazer had robbed Jirsak and, when she started screaming and tried to run out the door, grabbed her and shot her. Gary was listed as a witness for the State in the information filed against Bazer.
Omaha police officers arrived at Vicky's home at approximately 12:10 p.m. on February 18, 1988. A police report indicates that the officers were directed to Vicky's home after Mack Riggs, an acquaintance of Bazer and Bowen, went to the scene of the crime. Riggs reported that during the previous 2 weeks, Bazer and Bowen had asked him if he wanted to help them rob Jirsak's candy store. Riggs was also listed as a witness in the information.
Vicky gave the officers permission to search her home. The officers testified that they located Bazer inside the home and that after Bazer was informed of his Miranda rights, he voluntarily admitted to the robbery and shooting of Jirsak. Bazer told the officers that certain individuals had threatened him because he owed them money. According to the officers' depositions and police reports, Bazer told them that he had pulled Jirsak by the hair and had pointed the gun at her head when she tried to escape. Bazer claimed that he had thought the safety was on and that the gun had discharged accidentally, killing Jirsak. At the time he was making these statements, Bazer denied being intoxicated, and the officers did not believe Bazer to be intoxicated at that time. Bazer did not make a taped confession.
Before leaving Vicky's house, Bazer led the officers to the location of the gun he had used. This gun was later found by the crime laboratory to be in good operating condition. But an expert hired by Bazer's trial counsel opined that the gun was in a condition such that the user could think the safety was in a safe position, when, in reality, it was not. Tests also found that the gun matched a cartridge casing found at the scene of the shooting. The actual bullet found in the victim was broken into several pieces and was unidentifiable.

ON-THE-RECORD COLLOQUY OF STRATEGY
Bazer's counsel made a motion to suppress Bazer's confessions to the police, but the motion was denied by the trial court. Nevertheless, a plea agreement offered by the State was rejected by Bazer, and the defense's intent was to proceed to trial. Before voir dire, the court reporter recorded a conversation between Bazer and his trial cocounsel. In this conversation, Bazer affirmed that they had spent considerable time discussing trial strategy and that he agreed with trial counsel's strategy to tell the jury "right from Day One" that Bazer did, in fact, "fire that weapon that killed Miss Jirsak." During this colloquy, trial counsel explained that all the other evidence already supported this conclusion and that it was not something the jury was "going to have trouble with anyway." Instead, trial counsel explained that by Bazer's admitting that he held the gun that had discharged and killed Jirsak, it was cocounsel's strategy to focus the jury's inquiry on whether Bazer had the requisite intent to commit the underlying crime of robbery. Trial counsel further stated that because cocounsel believed that Bazer lacked such intent, they would be asking the court to instruct the jury on a lesser offense such as manslaughter or second degree murder.

STATEMENTS TO JURY DURING Volk DIRE
During voir dire, Bazer's trial counsel accordingly explained to the jury that he was not denying that the case involved a "senseless waste of life." Furthermore, he was "not going to hide" from the jury the fact that Bazer "held the gun thatthat fired a shot that struck the back of her head and killed Mary Jirsak." Counsel stated that whether Bazer caused Jirsak's death was not an issue. Instead, the issue in the case was whether Bazer had intended to commit the robbery that formed the basis of the felony murder charge. Trial counsel made reference to possible evidence that the gun had misfired, and he explained to the jury that in order for the State to prove felony murder, it would have to prove, beyond a reasonable doubt, that Bazer intended to commit the underlying robbery.
In this regard, counsel stated that he expected the jury to be presented with evidence that Bazer had consumed large amounts of alcohol and other controlled substances prior to the incident. Without objection, trial counsel told the jury that it would be presented with expert testimony that a person's ability to think, and to form the goal-directed thought process of intent, could be affected by the consumption of alcohol and other substances. Trial counsel also mentioned fears in Bazer's mind "because of what other people were trying to do to him at that time." Counsel told the jury that he was not denying that Bazer committed some type of crime and deserved some form of punishment. However, counsel explained that the question with which the jury was presented was whether Bazer had the intent to commit the crime of felony murder.

DISCUSSION WITH TRIAL COURT ABOUT LESSER-OFFENSE INSTRUCTION
When trial counsel went further and suggested to the jury that it could find Bazer guilty of a lesser offense, the State initiated an off-the-record sidebar discussion with the court, and Bazer's trial counsel did not continue this line of discussion. The next day, during the State's voir dire, when the State explained to the jury that it made no difference whether the killing was accidental, Bazer's trial counsel requested a sidebar discussion. The record shows that the jury was then briefly dismissed so that the parties could discuss the unresolved issue of whether the court would allow instruction on a lesser offense.
Bazer's trial counsel argued that the State's voir dire was prejudicing the jury against a possible instruction on a lesser offense. The court responded that it had cautioned Bazer's counsel the day before that there was no guarantee such an instruction would be given, but it would hear "whatever arguments you have right now as to why I should deviate from what the Supreme Court has said over and over and over again on the felony murder charge. There is no lesser-included offense." Trial counsel argued that if Bazer did not formulate the requisite intent to commit the underlying crime of felony murder, then a manslaughter instruction would still be appropriate.
Trial counsel explained to the court that he was "very familiar" with Nebraska case law that holds that "[o]rdinarily it is not error for the court not to instruct for lesser-included when it's felony murder." Still, trial counsel quoted State v. Montgomery,[1] in which we said: "This is not to say . . . there might not occur a set of facts under which an instruction on the lesser offenses of second degree murder or manslaughter might not be appropriate." Counsel argued that the facts of this case justified such an exception. Counsel argued that there was a delay between the assault and the robbery such that the death was not ""in the perpetration"'" of the robbery, as that language is used in the felony murder statute. Trial counsel further cited Beck v. Alabama[2] and Enmund v. Florida[3] for the argument that due process and equal protection demanded that lesser offenses should be presented to the jury.
After hearing the State's argument on this point, the court concluded:
I don't have to decide on lesser-included until such time as we have an instruction conference. I think that
I can almost predict, though, that unless the evidence is something that is completely different than I anticipate it to be, there will be no lesser-included. I will make that decision at the proper time when we have our instruction conference.
I find nothing objectionable in [the State's] statement that [t]he State has no obligation and no duty to prove an intentional killing in this case.
The court went on to again caution Bazer's counsel that it was "highly improbable" that the jury would get any instructions other than felony murder and the use of a firearm in the commission of a felony. The court explained that if Bazer could not form the intent to commit the robbery, then the court could not see how Bazer could form the intent of any other criminal actand there was no evidence of a sudden quarrel that would support an instruction on manslaughter.

PLEA
Trial counsel then asked for a moment to consult with Bazer because "[t]his is a critical situation that we talked about before. . . ." Less than an hour later, Bazer entered a plea of guilty to the charge of first degree murder.
In exchange for Bazer's plea of guilty to the felony murder charge, the State agreed to dismiss the use of a firearm charge. Before accepting the plea, the court reviewed with Bazer various constitutional rights that he would be waiving by making the plea and Bazer affirmed that he understood. With regard to Bazer's Fifth Amendment right against self-incrimination, the Court stated:
At the trial you'd have a right to take the witness stand and testify in your own defense if you wanted to. No one could force you to testify; and, if you chose to remain silent, the jury could in no way construe your silence as evidence of guilt. By pleading guilty you do waive the opportunity to testify at a trial if you so desired. . . .
Before accepting Bazer's plea, the court heard Bazer describe to the court how he had gone to the candy store to rob Jirsak and how, when Jirsak started running, Bazer had grabbed her and then "the gun went off."
The court did not make any promises as to the sentence that would be imposed on the felony murder charge. Trial counsel did explain to the court that although Bazer was aware that the death penalty was a possibility, they were confident, given the review of the aggravating and mitigating circumstances, that Bazer would not be given the death penalty. Indeed, at the sentencing hearing, the State argued to the court that the evidence did not suggest aggravating circumstances that would justify the death penalty. The court found no aggravating or mitigating circumstances and sentenced Bazer to life imprisonment. No appeal was filed from the conviction.

MOTION FOR POSTCONVICTION RELIEF
On January 14, 2004, Bazer filed a pro se motion for postconviction relief. Thereafter, he was appointed counsel. In his operative motion, Bazer stated that before trial counsel's statements to the jury during voir dire, Bazer had rejected the State's offer to enter into a plea agreement wherein the weapons charge would be dropped. However, when trial counsel admitted to the jury that Bazer was the person who held the gun that shot and killed Jirsak, this admission of guilt left Bazer no other choice but to accept trial counsel's recommendation that Bazer accept the State's renewal of its plea bargain. Bazer alleged that but for counsel's admission of his guilt, he would not have pleaded guilty and that, therefore, his plea was not knowingly, intelligently, and voluntarily entered.
Bazer explained in his motion that he had agreed to the strategy of admitting he had shot Jirsak based on his trial cocounsel's incorrect and objectively unreasonable advisement that they would be able to get a lesser-included offense instruction before the jury. Bazer's motion does not explicitly call into question his trial cocounsel's strategy to show that Bazer did not form the requisite intent to commit robbery because of his levels of intoxication at the time of the incident.
As an alternative ground for postconviction relief, Bazer's motion asserted that the trial court failed to properly explain Bazer's waiver of his privilege against self-incrimination, as required by Boykin v. Alabama.[4]
A hearing on Bazer's motion for an evidentiary hearing was set for October 11, 2006. At the hearing on October 11, Bazer's postconviction counsel clarified that the hearing was not an evidentiary hearing, but was a hearing on whether an evidentiary hearing would be granted. Nevertheless, postconviction counsel entered into evidence the deposition testimony of both Bazer and one of his trial counsel in relation to their trial strategy and trial counsel's decision to plead guilty. The State then made an oral motion to dismiss the motion for postconviction relief. The proceedings ended with the court noting that prior to completing the hearing, the parties discussed and agreed that the appropriate procedure would be for Bazer's postconviction counsel to offer the bill of exceptions from the trial at that time. The trial record was offered and accepted without objection. No further hearing was held, and the trial court eventually granted the State's motion to dismiss on February 26, 2007.

ORDER OF POSTCONVICTION COURT
On February 26, 2007, the trial court granted the State's motion to dismiss Bazer's motion for postconviction relief. As a result, the court explained, Bazer's request for an evidentiary hearing would not be considered further.
The court found, after a complete review of the trial record, that the record did not support Bazer's allegations that trial counsel was unaware of the law of felony murder, that he had inappropriately advised Bazer on the ability to obtain an instruction on lesser offenses, or that trial counsel's action in admitting Bazer's actions to the jury in voir dire amounted to ineffective assistance of counsel. Instead, the court found that "the record supports [that trial] counsel chose a trial strategy which [Bazer] agreed to . . ., that the defense would attempt to establish a new precedent in the law in Nebraska since [Bazer] wanted to go to trial and he had virtually no other options in terms of a defense." Moreover, the court also found that the statement made to the jury that Bazer had fired the gun which caused the death of Jirsak, "[i]f for no other purpose . . . [,] was merely the strategy that the jury would ultimately hear of these acts . . . and . . . the jury would best hear it from defense counsel, as there was no basis to deny [Bazer's] actions."
The court found that Bazer's allegations concerning improper plea advisements were procedurally barred. The court reasoned that the advisement given to Bazer was necessarily known to him when a direct appeal could have been filed, but he did not file a direct appeal.
Bazer appeals the order granting the State's motion to dismiss his motion for postconviction relief.

ASSIGNMENTS OF ERROR
In this appeal, Bazer asserts that because of the alleged ineffective assistance of counsel and failure of the trial court to inform him of his privilege against self-incrimination, the postconviction court erred in not granting an evidentiary hearing on his motion for postconviction relief.

STANDARD OF REVIEW
[l] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion.[5]
[2] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[6] an appellate court reviews such legal determinations independently of the lower court's decision.[7]

ANALYSIS
[3,4] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations.[8] And, for any purpose, a plea of guilty generally embodies a waiver of every defense to the charge, whether procedural, statutory, or constitutional.[9] When a defendant pleads guilty, he is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.[10]
[5] Bazer alleges both that his plea was involuntary and that it was a result of ineffective assistance of counsel. While the plea itself did not waive issues relating to whether he entered into the plea voluntarily, on postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal.[11] Whether the trial court gave Bazer the proper admonitions before accepting his guilty plea was a matter concerning the on-the-record pretrial proceedings. Accordingly, this issue could have been raised in a direct appeal. Bazer's counsel did not file such an appeal, and Bazer does not argue that counsel was ineffective for failing to do so. Therefore, we do not address Bazer's claim relating to the court's alleged failure to ascertain whether he understood and waived his privilege against self-incrimination.[12]
We will, however, address Bazer's claim that his plea of guilty was the result of the ineffective assistance of trial counsel. When a defendant was represented both at trial and on direct appeal by the same lawyers, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.[13] The same is true where trial counsel elects not to file a direct appeal at all.[14] The current postconviction action, in which Bazer was appointed counsel different from his trial counsel, is Bazer's first opportunity to challenge trial counsel's effectiveness.
[6-8] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[15] The entire ineffectiveness analysis is viewed with the strong presumption that counsel's actions were reasonable.[16] And, when reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counse1.[17]
We conclude that the trial records and files affirmatively show that Bazer's plea was not the result of ineffective assistance of counsel.[18] Bazer's claim is that his guilty plea derived from trial counsel's unreasonable and erroneous strategy of trying to get a lesser-related offense instruction before the jury. According to Bazer, because he believed that such an instruction would be given, he agreed that counsel could "admit Bazer's guilt" to the jury during voir dire.[19] But once it became clear that the lesserrelated offense instruction would not be given, Bazer had no choice, given this admission, but to plead guilty.
We begin by noting that the record clearly demonstrates that Bazer's trial counsel did not, as Bazer suggests, "admit Bazer's guilt." Trial counsel told the venire that he was "not going to hide" the fact that Bazer held the gun that misfired and killed Jirsak, but counsel explained that the charge of felony murder required that the State prove Bazer intended the underlying robbery. Counsel suggested that Bazer was too intoxicated to formulate such an intent, and that therefore, he was not guilty of the crime charged.
As the recorded trial strategy discussion between Bazer and his counsel reflects, the decision to admit, from the beginning, that Bazer fired the gun that killed Jirsak was based on the overwhelming evidence against Bazer. Several people witnessed Bazer's admissions that he had shot Jirsak. In addition, Bazer confessed to the police that he had shot Jirsak, although he claimed that the gun fired accidentally. Bazer's motion to suppress these statements to the police had been overruled. Casings from the scene of the crime matched the gun that Bazer led the police to on the day of his arrest. In the recorded strategy conference, counsel explained to Bazer that the jury was not going to have any trouble reaching the conclusion that Bazer shot Jirsak.
The strategy of admitting Bazer shot Jirsak stemmed from counsel's determination that Bazer would be better off dealing frankly with the evidence and focusing the jury instead on a theory that might have had a better chance for acquittal. In light of the evidence that was going to be presented against Bazer, such a strategy was reasonable. As the U.S. Supreme Court has explained, "[c]ounsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations. . . . Often the interests of the accused are not advanced . . . by contesting all guilt. . . . "[20]
Bazer's ineffective assistance claim focuses exclusively on what he considers trial counsel's unreasonable belief that the jury should have been instructed as to a lesser-related offense. He claims that the decision to admit that he had fired the gun was related to this false belief and not to any other strategy. Contrary to Bazer's allegation, the record demonstrates that the strategy of obtaining a lesser-related offense instruction was merely another way that counsel sought in order to increase Bazer's chance of being acquitted on the felony murder charge.
But even if Bazer's plea was a direct result of counsel's pursuit of a lesser-related offense instruction, Bazer is simply wrong in concluding that seeking such an instruction was, at that time, an unreasonable and ineffective trial strategy. In a recorded sidebar discussion with the trial court, Bazer's counsel explained that he was well aware that, traditionally, Nebraska cases had held that there was no lesser-included offense to felony murder, but counsel noted that in State v. Montgomery,[21] this court seemingly left the door open to lesser-related instructions under certain circumstances, and counsel cited Beck v. Alabama[22] for the proposition that due process and equal protection demanded such instructions when the death penalty was in issue. In Beck, the U.S. Supreme Court held that it was error not to instruct the jury on the lesser-included offenses to the capital crime of " Thobbery or attempts thereof when the victim is intentionally killed by the defendant.'"[23] The Court reasoned, in part, that the "unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reasonits belief that the defendant is guilty of some serious crime and should be punished."[24] Bazer correctly points out that our law has always been clear that there is no lesser-included offense to felony murder.[25] But this is beside the point. The question was whether Bazer had a right to have the jury instructed on lesser-related offenses of second degree murder or manslaughter. A lesser-included offense is one in which its elements are fully embraced by the greater crime.[26] In contrast, a lesser-related offense is one that shares a common factual ground with the greater offense, but not a commonality in statutory elements.[27] Trial counsel's argument was that regardless of whether second degree murder or manslaughter were technically lesser-included offenses, under the reasoning of Beck, the jury should be instructed on these offenses because it should not be forced to choose between putting Bazer to death or setting him free.
Indeed, at the time of Bazer's trial, the law was unclear about the extent to which the principles articulated in Beck were applicable to cases involving felony murdera crime to which, under Nebraska law, there is no lesser-included offense. Many courts have held that lesser-related instructions were mandated by the principles articulated in Beck.[28] In 1996, in Reeves v. Hopkins,[29] the Eighth Circuit affirmed habeas corpus relief to the defendant convicted under Nebraska's felony murder statute because the trial court had refused to instruct the jury on the lesser-related offenses of second degree murder and manslaughter.
At the time of Bazer's trial, we had not specifically addressed the applicability of Beck to lesser-related offenses and felony murder. We had said only that it was "ordinarily" error to instruct the jury in a felony murder case that it could find the defendant guilty of second degree murder or manslaughter.[30] In Montgomery, we elaborated that there might occur a set of facts under which an instruction on the lesser offenses of second degree murder or manslaughter might be appropriate.
It was not until 1994 that, in State v. Masters,[31] we first addressed and rejected the applicability of Beck to felony murder and its lesser-related offenses. And it was not until 1998 that the U.S. Supreme Court finally resolved this issue when it reversed the Eighth Circuit's decision in Reeves v. Hopkins.[32] In Hopkins v. Reeves,[33] the U.S. Supreme Court explained that mandating a lesser-related offense instruction was "unworkable" and that because in Nebraska, capital sentencing was in the hands of the judge, the jury was not presented with the stark choice described in Beck.[34]
[9-11] "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."[35] Furthermore, the fact that a calculated trial tactic or strategy fails to work out as planned will not establish that counsel was ineffective.[36] A plea of guilty will be found to be freely and voluntarily entered upon the advice of counsel if that advice is within the range of competence demanded of attorneys in criminal cases.[37] We conclude that based on the law as it existed at the time Bazer made his plea and given the strength of the State's case against Bazer, it is apparent from the files and records that Bazer's trial counsel demonstrated no incompetence in attempting to procure instructions of second degree murder and manslaughter.
[12,13] Under the Nebraska Postconviction Act, the district court has discretion to adopt reasonable procedures for determining what the motion and the files and records show, and whether any substantial issues are raised, before granting a full evidentiary hearing.[38] Even if appropriate allegations are made, an evidentiary hearing should be denied if the trial records and files affirmatively show that the defendant is entitled to no relief.[39] In this case, the trial records and files affirmatively show that based upon the allegations made in Bazer's motion, Bazer is entitled to no relief. The trial court was correct in dismissing the motion.
AFFIRMED.
NOTES
[1] State v. Montgomery, 191 Neb. 470, 473, 215 N.W.2d 881, 884 (1974).
[2] Beck v. Alabama, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980).
[3] Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982).
[4] Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). See, also, e.g., State v. Jones, 264 Neb. 671, 650 N.W.2d 798 (2002).
[5] State v. Mata, 273 Neb. 474, 730 N.W.2d 396 (2007).
[6] Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[7] State v. Benzel, 269 Neb. 1, 689 N.W.2d 852 (2004).
[8] State v. Barnes, 272 Neb. 749, 724 N.W.2d 807 (2006).
[9] State v. Mason, 187 Neb. 675, 193 N.W.2d 576 (1972).
[10] See, id.; State v. Barnes, supra note 8.
[11] See, State v. Lyman, 241 Neb. 911, 492 N.W.2d 16 (1992), disapproved on other grounds, State v. Canbaz, 270 Neb. 559, 705 N.W.2d 221 (2005).
[12] See, Lopez v. Singletary, 634 So. 2d 1054 (Fla. 1993); People v. Stewart. 123 Ill. 2d 368, 528 N.E.2d 631, 123 Ill. Dec. 927 (1988).
[13] See State v. McHenry, 268 Neb. 219, 682 N.W.2d 212 (2004).
[14] See State v. Barnes, supra note 8.
[15] State v. Smith, 269 Neb. 773, 696 N.W.2d 871 (2005).
[16] State v. Lyman, supra note 11. See, also, e.g., State v. Benzel, supra note 7.
[17] State v. Benzel, supra note 7.
[18] See, State v. Soukharith, 260 Neb. 478, 618 N.W.2d 409 (2000); State v. Jones, supra note 4.
[19] Brief for appellant at 42.
[20] Tollett v. Henderson, 411 U.S. 258, 268, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).
[21] State v. Montgomery, supra note 1.
[22] Beck v. Alabama, supra note 2.
[23] Id., 447 U.S. at 627.
[24] Id., 447 U.S. at 642.
[25] See, e.g., State v. Hubbard, 211 Neb. 531, 319 N.W.2d 116 (1982); State v. McDonald, 195 Neb. 625, 240 N.W.2d 8 (1976); Morgan v. State, 51 Neb. 672, 71 N.W. 788 (1897).
[26] See State v. Shiffbauer, 197 Neb. 805, 251 N.W.2d 359 (1977).
[27] See, e.g., State v. Thomas, 187 N.J. 119, 900 A.2d 797 (2006).
[28] See, generally, Annot., 50 A.L.R.4th 1081 (1986).
[29] Reeves v. Hopkins, 102 F.3d 977 (8th Cir. 1996).
[30] See, e.g., State v. Ruyle, 234 Neb. 760, 452 N.W.2d 734 (1990); State v. Massey, 218 Neb. 492, 357 N.W.2d 181 (1984); State v. Hubbard, supra note 25.
[31] State v. Masters, 246 Neb. 1018, 524 N.W.2d 342 (1994). See, also, State v. Price, 252 Neb. 365, 562 N.W.2d 340 (1997).
[32] Reeves v. Hopkins, supra note 29.
[33] Hopkins v. Reeves, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998).
[34] Id., 524 U.S. at 97. See, also, State v. Moore, 256 Neb. 553, 591 N.W.2d 86 (1999).
[35] Brady v. United States, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).
[36] State v. Journey, 207 Neb. 717, 301 N.W.2d 82 (1981).
[37] State v. Silvers, 255 Neb. 702, 587 N.W.2d 325 (1998); State v. Escatnilla, 245 Neb. 13, 511 N.W.2d 58 (1994).
[38] State v. McLeod, 274 Neb. 566, 741 N.W.2d 664 (2007); State v. Dean, 264 Neb. 42, 645 N.W.2d 528 (2002).
[39] See, State v. Jones, supra note 4; State v. Soukharith, supra note 18.