769 N.W.2d 401 (2009)
278 Neb. 268
STATE of Nebraska, appellee,
v.
David L. DUNSTER, appellant.
No. S-08-227.
Supreme Court of Nebraska.
August 7, 2009.
*405 Peter K. Blakeslee for appellant.
Jon Bruning, Attorney General, and J. Kirk Brown, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
David L. Dunster was convicted of murdering his prison cellmate and sentenced to death. His convictions and sentences were affirmed on direct appeal. This appeal is taken from the district court's denial, without an evidentiary hearing, of Dunster's first motion for postconviction relief. Because Dunster was represented by different counsel at trial and on direct appeal, the primary issue in this appeal is whether Dunster's claims are procedurally barred.

BACKGROUND
Dunster was already a convicted murderer when, on May 10, 1997, he strangled his cellmate. Dunster was charged with first degree murder and use of a weapon to commit a felony. He stood mute on the charges, and pleas of not guilty were entered on his behalf. The Lancaster County public defender's office was appointed to represent him. Dunster became dissatisfied with the public defender and sent a letter to the trial judge asking that the public defender be discharged. Dunster asked the trial court to allow him to withdraw his plea and plead guilty, then sentence him to death. Dunster refused to consult with the public defender about his decision to represent himself. The trial court appointed the Nebraska Commission on Public Advocacy (NCPA) for the limited purpose of advising Dunster on his request to proceed pro se. The NCPA's appointment was "to represent [Dunster] solely on [the] issue raised during [the] hearing regarding how [Dunster] wishes to proceed in this matter." After consulting with the NCPA, Dunster withdrew the issues he had raised "without prejudice" and the public defender continued to represent him. Counsel from the NCPA agreed that "the issues that were raised that necessitated the appointment of the [NCPA]" had been concluded, and the NCPA was released from the case.
At a pretrial hearing, Dunster's attorney from the public defender's office informed the court that he would be leaving the public defender's office and would not *406 be available to try the case. Dunster asked for the NCPA to be appointed to represent him. The trial court denied that request and determined that the case would be reassigned to a different public defender. Dunster again moved to discharge the public defender and proceed pro se and moved to withdraw his plea and plead guilty. The trial court granted Dunster's motions and appointed the public defender's office as standby counsel. Dunster's plea was accepted, and he was convicted of first degree murder. Before the sentencing hearing, Dunster indicated to his standby counsel that he would like the public defender's office reappointed. Dunster claimed that his previous decisions to proceed pro se and plead guilty had occurred when he was impaired by medication. The public defender's office was reappointed to represent Dunster.
Dunster, through his counsel, requested a competency hearing. At the outset of the hearing, Dunster again moved to discharge the public defender. The court took the motion under advisement pending the competency hearing. The court determined that Dunster was competent and granted Dunster's motion to discharge the public defender, who was again appointed as standby counsel. Dunster appeared pro se at sentencing, with his standby counsel, and refused to present evidence in his defense. Dunster was sentenced to death.
The NCPA was appointed to represent Dunster on appeal to this court. Through counsel, Dunster argued, among other things, that he was denied effective assistance of counsel from the public defender. This court found the record sufficient to address his arguments, and we rejected them.[1] We affirmed Dunster's convictions and sentences.[2] Dunster, represented by the NCPA, separately filed motions in the trial court for a new trial and to vacate his death sentence as void, citing Ring v. Arizona[3] and 2002 Neb. Laws, L.B. 1. Dunster's motions were denied. We affirmed the denial of his motion for new trial and dismissed his arguments with respect to the alleged voidness of his sentence.[4]
Dunster, through new counsel, filed the present motion for postconviction relief. Dunster alleged, among other things, that the trial court had been without authority to make findings of aggravating circumstances and to sentence him to death, because the Nebraska death penalty statutes in effect at the time were unconstitutional. Dunster also raised the constitutionality of electrocution as a means of execution. And Dunster alleged that he was denied effective assistance of trial and direct appeal counsel. Specifically, Dunster contended that direct appeal counsel was ineffective in raising ineffective assistance of trial counsel, because the record was insufficient to prove the claim. The postconviction court denied Dunster's motion for postconviction relief without an evidentiary hearing. The court specifically found that each counsel's representation of Dunster had not been deficient and that in any event, Dunster had not been prejudiced. Dunster appeals.

ASSIGNMENTS OF ERROR
Dunster assigns that the postconviction court erred in:
*407 (1) failing to find that it lacked jurisdiction to impose a death sentence, because the Nebraska death penalty statutes were unconstitutional;
(2) failing to find that it lacked jurisdiction to impose a death sentence because it was without authority to make factual findings regarding an aggravating circumstance;
(3) failing to find that the indictment deprived it of jurisdiction to impose a death sentence because the indictment failed to allege an aggravating circumstance;
(4) failing to find that Dunster's sentence is void as a result of 2002 Neb. Laws, L.B. 1;
(5) determining that the issue of the constitutionality of electrocution was procedurally barred;
(6) failing to grant an evidentiary hearing on whether Dunster received effective assistance of trial counsel during preparation for trial and at his competency hearing; and
(7) failing to grant an evidentiary hearing on whether Dunster received effective assistance of direct appeal counsel.

STANDARD OF REVIEW
[1-4] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion.[5] And while mootness does not prevent appellate jurisdiction, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.[6] When a jurisdictional question does not involve a factual dispute, an appellate court determines the issue as a matter of law.[7]
[5-7] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[8] an appellate court reviews such legal determinations independently of the lower court's decision.[9]

ANALYSIS

CONSTITUTIONALITY OF CAPITAL SENTENCING STATUTES
Dunster's first three assignments of error are predicated on the U.S. Supreme Court's holding in Ring v. Arizona,[10] that the Sixth Amendment precludes a sentencing judge sitting without a jury from finding an aggravating circumstance necessary for imposition of the death penalty, and this court's holding in State v. Gales[11] that *408 Nebraska's capital sentencing scheme had been invalidated by the Ring decision.
But Dunster's conviction was final before the Court's decision in Ring, and we held in State v. Lotter[12] that the Ring decision did not apply retroactively to cases already final on direct appeal. The U.S. Supreme Court later reached the same conclusion in Schriro v. Summerlin.[13] Given the Court's decision in Schriro, we decline to reconsider our conclusion in Lotter, and find Dunster's first three assignments of error to be without merit.

L.B. 1
[8] Dunster's fourth assignment of error is that his sentence is void as a result of the Legislature's enactment of 2002 Neb. Laws, L.B. 1, which amended Nebraska's capital sentencing statutes to comply with Ring. Dunster's argument seems to be that his sentence is void because the procedural requirements of L.B. 1 were not complied with when he was convicted and sentenced to death.
[9] But Dunster's conviction and sentence became final well before L.B. 1 was enacted. The new procedural requirements of L.B. 1 are simply not applicable to steps taken before the law was enacted.[14] While procedural statutes apply to pending litigation, new procedural statutes have no retroactive effect upon any steps that may have been taken in an action before such statutes were effective.[15] We explained in State v. Gales that under such circumstances, "[a]ll things performed and completed under the old law must stand."[16] And in Dunster's case, as in State v. Russell,[17] the entire trial had already been completed in the district courtand here, the appeal had also become finalbefore the amendatory procedural act became effective.
Dunster cites no authority, nor are we aware of any, supporting his assertion that his sentence is void because of procedural requirements that were not imposed until after the judgment in his criminal trial was final. Therefore, we find no merit to this assignment of error.

ELECTROCUTION AS MEANS OF EXECUTION
[10] Dunster's fifth assignment of error is that the court erred in finding that his challenge to the constitutionality of electrocution, as a means of execution, was procedurally barred. As a technical matter, the district court's conclusion was correct.[18] But as a practical matter, Dunster's argument is moot.
[11] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.[19] We held in State v. Mata[20] that electrocution as a method of execution is cruel and *409 unusual punishment in violation of the Nebraska Constitution. Obviously, the State cannot carry out Dunster's sentence without a constitutionally acceptable method of execution.[21] And electrocution is no longer the method of execution under Nebraska law.[22] Stated plainly, Dunster is no longer subject to electrocution. Therefore, we need not consider this assignment of error.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
[12-14] Dunster's sixth assignment of error raises the issue of effective assistance of trial counsel. Dunster's allegations appear to be entirely directed at counsel's performance while counsel was appointed to represent him, which is appropriate as we have held that there is no constitutional right to effective assistance of standby counsel.[23] And although a defendant who elects to proceed pro se "cannot thereafter complain that the quality of his [or her] own defense amounted to a denial of `effective assistance of counsel,'"[24] the defendant may maintain a claim for ineffective assistance of counsel for any acts or omissions that occurred before the defendant elected to proceed pro se.[25] Therefore, the scope of our analysis does not include Dunster's self-representation.
[15-17] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with Strickland v. Washington,[26] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[27] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[28] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[29] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[30] And while normally a voluntary guilty plea waives all defenses to a criminal charge, in a postconviction proceeding brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.[31]
[18] But most of Dunster's claims are procedurally barred. Dunster was represented by different counsel at trial and on direct appeal. Under Nebraska law, in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is *410 apparent from the record, or the issue will be procedurally barred on postconviction review.[32] As noted above, Dunster's direct appeal counsel did raise ineffective assistance of trial counsel as an issue, and we rejected those arguments on the merits. And the record establishes that the allegations of ineffective assistance of counsel that were not raised on direct appeal were known to Dunster at trial, because they formed the basis of many of his disagreements with the public defender's office.
[19, 20] A defendant cannot secure postconviction review of issues which were or could have been litigated on direct appeal.[33] To the extent that Dunster is alleging trial counsel was ineffective in ways that were also raised on direct appeal, we have rejected those arguments and they cannot be relitigated here. And to the extent that Dunster's allegations of ineffective assistance of the public defender at trial were not raised on direct appeal, they are procedurally barred, because they were known to the defendant and apparent on the record.[34]
[21] Dunster argues that we erred, on direct appeal, in finding that the record was sufficient to review the claims of ineffective assistance of trial counsel that Dunster actually raised. As Dunster notes, claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal.[35] Dunster alleges that we should not have considered ineffective assistance of trial counsel on direct appeal, because contrary to our finding, the record was actually insufficient to adequately review the question.
But Dunster's allegation does not prevent his claims from being procedurally barred. Although Dunster may disagree, we determined in Dunster's direct appeal that the record was sufficient.[36] The remedy provided by the Nebraska Postconviction Act[37] "is cumulative and is not intended to be concurrent with any other remedy existing in the courts of this state."[38] The phrase "any other remedy" encompasses a direct appeal when the issue raised in the postconviction proceeding can be raised in the direct appeal.[39] From that principle is derived the rule that a motion for postconviction relief cannot be used to secure a further review of issues already litigated on direct appeal.[40] Dunster cannot use a motion for postconviction relief to collaterally attack issues that were decided against him on direct appeal.
[22, 23] The only specifications of ineffective assistance of trial counsel that are not procedurally barred are the few allegations that relate to the performance of the NCPA, which represented Dunster in a limited capacity at trial, then represented him fully on direct appeal. Claims of *411 ineffective assistance of counsel raised on direct appeal by the same counsel who represented the defendant at trial are premature and will not be addressed on direct appeal.[41] Therefore, when a defendant was represented both at trial and on direct appeal by lawyers employed by the same office, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.[42]
[24] But Dunster's allegation is that the NCPA should have investigated the performance of the public defender's office and filed a motion to discharge the public defender and that it was ineffective in not doing so. In fact, the NCPA did not act deficiently, as the alleged omissions were outside the limited scope of the NCPA's appointment to advise Dunster.
In that regard, Dunster's argument is somewhat akin to a claim of ineffective assistance of standby counsel. There is no constitutional right to effective assistance of standby counsel.[43] But some courts have held that where counsel is appointed to act in some sort of limited capacity, a defendant can maintain a claim that counsel provided ineffective assistancewithin the limited scope of the duties assigned to or assumed by counsel.[44] This occurs when, for instance, "standby" counsel ceases to stand by and actually steps in and assumes formal control of some aspect of the defendant's legal representation.[45] But a self-represented defendant may not claim ineffective assistance on account of counsel's failure to perform an act within the scope of duties the defendant voluntarily undertook to perform personally.[46]
In this case, Dunster elected to proceed pro se, and the district court appointed the NCPA in the limited capacity of advising him with respect to that election. Dunster alleges that the NCPA provided ineffective assistance of counsel, because it did not investigate the representation provided by the public defender to that point or act to remedy the public defender's allegedly deficient representation. But that was beyond the scope of the duties with which the NCPA was charged. Dunster neither alleges nor argues that the NCPA performed deficiently within the limited scope of the duties it was assigned.
Nor was Dunster prejudiced by the alleged failure to investigate the public defender or move that the public defender be discharged. Multiple motions to discharge the public defender were filed and, eventually, sustained. Ineffective assistance of counsel arguments with respect to the public defender were raised and rejected on direct appeal.[47] And the underlying allegation that the public defender failed to investigate Dunster's medical condition at the time of the killing was an aspect of defense strategy that Dunster personally assumed when he undertook to represent himself.[48]
Dunster contended at oral argument that the NCPA was "complicit" in the public defender's alleged ineffectiveness. As we understand Dunster's argument, it is *412 that the NCPA could not raise certain ineffective assistance of trial counsel claims on direct appeal because it would be tantamount to arguing the NCPA's own ineffectiveness, which it could not do. Therefore, Dunster asserted that his claims of ineffective assistance of the public defender are not procedurally barred because the NCPA could not raise them on direct appeal. But this conclusion rests on the claim that the NCPA was ineffective at triala claim we have already rejected. In other words, the NCPA's ability to raise issues on appeal was not fettered by its own ineffectiveness at trial, because it was not ineffective at trial. Because Dunster was not limited in his ability to argue on direct appeal that the public defender had been ineffective, those claims are, as explained above, procedurally barred.
In short, the record from Dunster's direct appeal[49] affirmatively contradicts Dunster's argument that the NCPA should have investigated the public defender's performance or that Dunster was prejudiced by any failure to do so. This is, essentially, a recasting of the ineffective assistance of trial counsel claim that we considered and rejected on direct appeal. Dunster's claims of ineffective assistance of counsel are either procedurally barred or without merit.

INEFFECTIVE ASSISTANCE OF DIRECT APPEAL COUNSEL
Dunster's seventh and final assignment of error is that he was denied effective assistance of counsel on direct appeal. Dunster generally alleges two ways in which, he claims, direct appeal counsel was ineffective. One of those is that direct appeal counsel was ineffective in failing to challenge the constitutionality of electrocution as a method of execution. As discussed above, Dunster is no longer subject to electrocution. Therefore, Dunster was not prejudiced by his direct appeal counsel's failure to challenge its constitutionality.
[25] Dunster's other argument is that direct appeal counsel was ineffective in raising, on direct appeal, the issue of ineffective assistance of trial counsel. But direct appeal counsel's performance was not deficient in that regard. As noted above, where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.[50]
Dunster's claim is that ineffective assistance of trial counsel is now a procedurally barred issue because it was raised on direct appeal. But direct appeal counsel was required to raise ineffective assistance of trial counsel in order to preserve it for any postconviction review.[51] As it happened, this court concluded that the record was sufficient to review the issue and found it to be without merit. But because the issue was apparent from the record, it would have been procedurally barred either way. Direct appeal counsel did not act deficiently in raising the issue, nor was Dunster prejudiced as a result. Dunster's final assignment of error is without merit.

CONCLUSION
For the reasons stated above, Dunster's assignments of error are either procedurally barred or without merit. Because the files and records affirmatively show that Dunster is entitled to no relief, there was *413 no need for an evidentiary hearing.[52] The judgment of the district court denying Dunster's motion for postconviction relief is affirmed.
AFFIRMED.
NOTES
[1] See State v. Dunster, 262 Neb. 329, 631 N.W.2d 879 (2001), cert. denied 535 U.S. 908, 122 S.Ct. 1210, 152 L.Ed.2d 147 (2002).
[2] See id.
[3] Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[4] See State v. Dunster, 270 Neb. 773, 707 N.W.2d 412 (2005).
[5] State v. Bazer, 276 Neb. 7, 751 N.W.2d 619 (2008).
[6] See In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008).
[7] State v. Mata, 275 Neb. 1, 745 N.W.2d 229 (2008), cert. denied ___ U.S. ___, 129 S.Ct. 228, 172 L.Ed.2d 175.
[8] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[9] See State v. Hudson, 277 Neb. 182, 761 N.W.2d 536 (2009).
[10] Ring, supra note 3.
[11] State v. Gales, 265 Neb. 598, 658 N.W.2d 604 (2003).
[12] State v. Lotter, 266 Neb. 245, 664 N.W.2d 892 (2003).
[13] Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).
[14] See Gales, supra note 11.
[15] See, id.; State v. Russell, 194 Neb. 64, 230 N.W.2d 196 (1975).
[16] Gales, supra note 11, 265 Neb. at 635, 658 N.W.2d at 631, citing Russell, supra note 15.
[17] Russell, supra note 15.
[18] See State v. Moore, 272 Neb. 71, 718 N.W.2d 537 (2006).
[19] See, State v. Woods, 255 Neb. 755, 587 N.W.2d 122 (1998); State v. Nissen, 252 Neb. 51, 560 N.W.2d 157 (1997).
[20] Mata, supra note 7.
[21] See id.
[22] See L.B. 36, 101st Leg., 1st Sess.
[23] See State v. Gunther, 278 Neb. 173, 768 N.W.2d 453 (2009).
[24] Faretta v. California, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[25] See, e.g., Downey v. People, 25 P.3d 1200 (Colo.2001); Hance v. Kemp, 258 Ga. 649, 373 S.E.2d 184 (1988).
[26] Strickland, supra note 8.
[27] State v. Rhodes, 277 Neb. 316, 761 N.W.2d 907 (2009).
[28] Id.
[29] Id.
[30] Id.
[31] See State v. Amaya, 276 Neb. 818, 758 N.W.2d 22 (2008).
[32] State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[33] Bazer, supra note 5.
[34] See State v. Thomas, 278 Neb. 248, 769 N.W.2d 357 (2009).
[35] State v. Jones, 274 Neb. 271, 739 N.W.2d 193 (2007).
[36] See Dunster, supra note 1.
[37] Neb.Rev.Stat. §§ 29-3001 to 29-3004 (Reissue 2008).
[38] § 29-3003.
[39] Molina, supra note 32.
[40] See id.
[41] State v. Tucker, 17 Neb.App. 487, 764 N.W.2d 137 (2009).
[42] State v. Harris, 267 Neb. 771, 677 N.W.2d 147 (2004).
[43] Gunther, supra note 23.
[44] See, People v. Blair, 36 Cal.4th 686, 115 P.3d 1145, 31 Cal.Rptr.3d 485 (2005); Downey, supra note 25.
[45] See id.
[46] See People v. Bloom, 48 Cal.3d 1194, 774 P.2d 698, 259 Cal.Rptr. 669 (1989).
[47] See Dunster, supra note 1.
[48] See, Blair, supra note 44; Downey, supra note 25; Bloom, supra note 46.
[49] See Dunster, supra note 1.
[50] Molina, supra note 32.
[51] See, e.g., Thomas, supra note 34.
[52] See Bazer, supra note 5.