775 N.W.2d 922 (2009)
278 Neb. 1006
STATE of Nebraska, appellee,
v.
Daryle M. DUNCAN, appellant.
No. S-08-1308.
Supreme Court of Nebraska.
December 4, 2009.
*924 Brian S. Munnelly for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
The State convicted Daryle M. Duncan of first degree murder and use of a deadly weapon to commit a felony for the December 4, 1999, death of Lucille Bennett. He received consecutive sentences of life in prison for first degree murder and 19 to 20 years' imprisonment for use of a deadly weapon to commit a felony. We affirmed his convictions and sentences on direct appeal.[1] Duncan now appeals the district court's order denying his motion for postconviction relief. We affirm.

*925 BACKGROUND
The facts underlying Duncan's convictions are set forth in State v. Duncan,[2] and we summarize those facts which relate to this postconviction proceeding.
In April 2001, Duncan was convicted of killing 87-year-old Bennett. Shortly before 10:30 a.m. on Sunday, December 5, 1999, Bennett's body was found in her home. Bennett died of a stab wound to the right side of the neck, which penetrated two major arteries. The State charged Duncan with first degree murder and use of a deadly weapon to commit a felony. A jury found Duncan guilty of both charges. After retaining new counsel, Duncan appealed his convictions and sentences, and we affirmed.[3]
One issue Duncan raised on direct appeal was ineffective assistance of trial counsel for failing to object to testimony regarding Crimestoppers telephone calls. Omaha police officer Steven Henthorn was the lead investigator and testified generally as to the investigation of Bennett's murder. The specific portions of Henthorn's testimony on direct examination and redirect examination at issue are set forth below.
Q. Let me ask you, on December 5th or December 6th  and I don't want you to tell me anything about what was said  but on December 5th or 6th of 1999, were there Crime Stoppers reports coming in to the police department about this murder?
[Defense]: I'll object on relevance. Calls for a hearsay response.
[State]: I'm not asking him what was in them. I just wanted to know if they were coming in.
[Defense]: Relevance.
THE COURT: You may answer.
[A.] No, we were not.
....
Q. ... On the 7th of December, did Crime Stoppers calls  did you have any Crime Stoppers calls?
[Defense]: Objection, relevance. Calls for hearsay response.
[State]: Not what was in them.
THE COURT: Crime Stoppers calls in connection with what?
[State]: Regarding the murder of Lucille Bennett.
THE COURT: You may answer.
[A.] Yes, we did.
Q. ... About what time was that?
A. I believe it was about 9:30 in the morning.
Q. Okay. And at some point in time did you begin investigating Mr. Duncan?
A. Yes.
Q. When was that?
A. About 9:30 in the morning 
Q. Okay.
A.  on the 7th of December.
Q. Okay. Did  what did you do after  at some point in time you got some information that Mr. Duncan  you started looking at him?
A. Yes.
....
Q. ... And did you get  in this particular case, did you get Crime Stoppers reports before  how many Crime Stoppers reports did you get before the 10th of December?
[Defense]: Objection, relevance, foundation.
THE COURT: You may answer.
[A.] Two.
*926 On direct appeal, we determined that the district court properly overruled Duncan's hearsay objections but that the court erred in overruling Duncan's relevance objections.[4] We concluded, however, that Duncan's convictions were "surely unattributable to this error."[5] On direct appeal, Duncan also argued that his counsel provided ineffective assistance for failing to object to some Crimestoppers questions on different specified grounds.[6] But, we did not address this issue because we concluded it necessitated an evidentiary hearing.[7]
So Duncan, through new counsel, filed the present motion for postconviction relief.[8] In his operative motion, Duncan alleged that trial counsel was ineffective for many reasons, including failing to object to the above Crimestoppers testimony. He also alleged that his appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffective assistance on direct appeal.
After an evidentiary hearing, the district court concluded that trial counsel was not deficient; thus, it implicitly concluded that Duncan's claims regarding appellate counsel's ineffective assistance were without merit.

ASSIGNMENTS OF ERROR
On appeal to this court, Duncan assigns six errors regarding trial counsel's performance. But he does not assign that the district court erred in failing to find his appellate counsel provided ineffective assistance. Duncan assigns the court erred in failing to find that trial counsel was ineffective for failing to (1) object to the Crimestoppers testimony in violation of his rights under U.S. Const. amends. VI and XIV; Neb. Const. art. I, § 11; and Nebraska Evidence Rules; (2) call a necessary witness; (3) object to the trial court's limiting his cross-examination of a witness in violation of U.S. Const. amend. VI; (4) effectively cross-examine a witness; (5) not allow Duncan to testify; and (6) call witnesses on Duncan's behalf.

STANDARD OF REVIEW
A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[9] When reviewing a question of law, we resolve the question independently of the lower court's conclusion.[10]

ANALYSIS
Duncan's assigned errors all raise issues of his trial counsel's ineffective assistance. To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, under Strickland v. Washington,[11] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in *927 the area.[12] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[13] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[14] A court may address the two prongs of this test, deficient performance and prejudice, in either order.

ISSUES RAISED ON DIRECT APPEAL
We first address arguments raised by Duncan on direct appeal that we determined needed an evidentiary hearing. Duncan alleges that the trial counsel was ineffective for failing to object to the State's questions regarding the Crimestoppers testimony. As noted, Duncan's trial counsel objected twice to this line of questioning. But Duncan claims that his trial counsel should have objected to all questions the State asked Henthorn regarding the Crimestoppers call. Duncan argues that trial counsel's failure to object violated his rights under U.S. Const. amends. VI and XIV; Neb. Const. art. I, § 11; and Neb. Evid. R. 401, 403, 801, and 802.[15] Duncan also claims his trial counsel was ineffective for failing to move for a mistrial based on this testimony.
On direct appeal, we concluded that the district court properly overruled Duncan's hearsay objections because the two questions he objected to asked whether and when the police received any Crimestoppers calls. We determined that because the questions did not call for an oral or written assertion made by an out-of-court declarant and the content of those calls was never explicitly divulged, there was no hearsay.[16]
Similarly, for the questions trial counsel did not object to, there was no statement which would implicate a hearsay issue.[17] Hearsay requires a statement made by an out-of-court declarant, and the statement, as relevant here, requires an oral or written assertion.[18] The questions Duncan's trial counsel did not object to do not require Henthorn to reiterate an oral or written assertion made by an out-of-court declarant, and he did not divulge any of the information contained in the Crimestoppers calls.[19] Trial counsel was not deficient for failing to object on hearsay grounds.
Furthermore, the Confrontation Clauses of U.S. Const. amend. VI and Neb. Const. art. I, § 11, guarantee defendants the right to confront and cross-examine the witnesses against them.[20] And, as noted, Henthorn did not testify about what the Crimestoppers caller said. Henthorn mentioned the Crimestoppers call only to explain why he had investigated Duncan. Because the prosecutor never presented a statement from the Crimestoppers caller to the jury, the Confrontation Clauses are not implicated; there was no statement, *928 so no right to confront the maker of it was implicated.[21]
Duncan also argues that Henthorn's testimony was unnecessary and prejudicial and that the court should have excluded it under rule 403. He argues that the "testimonial and scientific evidence of [Duncan's] guilt was not overwhelming" and that it was "highly probable that this error contributed to the verdict, and was thus, not harmless."[22] On direct appeal, we concluded that the district court erred in overruling Duncan's relevance objections but concluded that the erroneous admission of the evidence was harmless because his conviction was unattributable to the error.[23]
An erroneous admission of evidence is considered prejudicial to a criminal defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.[24] Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[25]
As we noted on direct appeal, the State presented evidence from Duncan's ex-wife, along with two other witnesses, which established that Duncan was privy to the details of Bennett's murder before Bennett's body was discovered and reported to the police. Duncan also told his ex-wife that he murdered Bennett. We conclude that any failure of Duncan's trial counsel to object to Henthorn's testimony was not prejudicial. The evidence supports Duncan's convictions and renders the court's erroneous admission of Henthorn's testimony harmless.

CLAIMS OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
Duncan's remaining assignments of error all concern the actions of trial counsel that were not raised on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.[26] Otherwise, the issue will be procedurally barred.[27] All of Duncan's remaining postconviction claims of trial counsel's ineffective assistance were available to him on direct appeal. Because he did not raise those claims, they are procedurally barred. His claim that his appellate counsel provided ineffective assistance by failing to raise these issues on direct appeal is not procedurally barred.[28] But on appeal, Duncan has not assigned that the postconviction court erred in failing to find that his appellate counsel provided ineffective assistance. When claims of a trial counsel's performance are procedurally barred, we examine claims regarding trial counsel's performance only if the defendant assigns as error that appellate counsel *929 was ineffective for failing to raise trial counsel's performance.[29]
The district court addressed Duncan's claims regarding trial counsel's performance, and found them all to be meritless. On appeal before us, Duncan has failed to raise an issue regarding appellate counsel's performance. Because he has failed to assign this as error, we do not examine whether appellate counsel was ineffective for failing to raise trial counsel's performance. We do not consider errors which are argued but not assigned.[30] Having examined the record, we conclude that Duncan's assignments of error have no merit.
AFFIRMED.
NOTES
[1] State v. Duncan, 265 Neb. 406, 657 N.W.2d 620 (2003).
[2] Id.
[3] Id.
[4] Id.
[5] Id. at 418, 657 N.W.2d at 631.
[6] Duncan, supra note 1.
[7] Id.
[8] Neb.Rev.Stat. § 29-3001 et seq. (Reissue 2008).
[9] State v. Marshall, 269 Neb. 56, 690 N.W.2d 593 (2005).
[10] See, State v. Dunster, 278 Neb. 268, 769 N.W.2d 401 (2009); State v. Bazer, 276 Neb. 7, 751 N.W.2d 619 (2008).
[11] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[12] See State v. Rhodes, 277 Neb. 316, 761 N.W.2d 907 (2009).
[13] Id.
[14] Id.
[15] Neb.Rev.Stat. §§ 27-401, 27-403, 27-801, and 27-802 (Reissue 2008).
[16] Duncan, supra note 1.
[17] See Neb. Evid. R. 801 to 805, Neb.Rev. Stat. §§ 27-801 to 27-805 (Reissue 2008).
[18] Rule 801(1) and (3).
[19] See rule 801(3).
[20] U.S. Const. amend. VI. See State v. Sheets, 260 Neb. 325, 618 N.W.2d 117 (2000), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[21] See U.S. v. Cromer, 389 F.3d 662 (6th Cir.2004).
[22] Brief for appellant at 38.
[23] Duncan, supra note 1.
[24] Sheets, supra note 20.
[25] State v. Brouillette, 265 Neb. 214, 655 N.W.2d 876 (2003).
[26] See Dunster, supra note 10.
[27] Id.
[28] See State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008).
[29] See id.
[30] State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007); State v. King, 272 Neb. 638, 724 N.W.2d 80 (2006); State v. Hernandez, 268 Neb. 934, 689 N.W.2d 579 (2004).