778 N.W.2d 713 (2010)
279 Neb. 405
STATE of Nebraska, appellee,
v.
Germai R. MOLINA, appellant.
No. S-09-619.
Supreme Court of Nebraska.
February 5, 2010.
*715 John H. Marsh, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., Kearney, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Germai R. Molina was convicted of second degree murder and child abuse resulting in the death of his daughter. His convictions were affirmed by this court in State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006) (Molina I). Molina's motion for postconviction relief was denied without an evidentiary hearing by the Hall County District Court, and he appeals.

SCOPE OF REVIEW
A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. State v. Glover, 278 Neb. 795, 774 N.W.2d 248 (2009).
A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. Id. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. State v. Glover, supra.
Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court resolves the question independently of the *716 lower court's conclusion. State v. Dunster, 278 Neb. 268, 769 N.W.2d 401 (2009).

FACTS
At approximately 3:30 a.m. on July 23, 2003, Molina and his wife, Diana (Mrs. Molina), took their daughter, also named Diana, to a hospital in Grand Island, Nebraska. Diana, who was 2 years 10 months old, was not breathing and had no pulse. Molina reportedly told the emergency room physician that Diana had fallen down some stairs. Diana was pronounced dead after about 30 minutes of attempted resuscitation.
Molina was arrested at the hospital. He told police that the day before Diana died, he discovered that she had urinated on the floor. He spanked her with a belt and made her clean up the urine. He said that when he told his wife what had happened, she scolded Diana.
About 2:30 a.m. the next day, Diana woke up and said she needed to use the bathroom. Molina, his wife, and their two daughters slept in the basement of a two-story house. The bathroom was on the second floor. Molina said that he took Diana upstairs and that on the way back, she tripped and fell down the stairs. Diana was unconscious when he reached her. He said he splashed cold water on her face and rubbed alcohol on his hands and then on her nose, but Diana was unresponsive. He and Mrs. Molina attempted mouth-to-mouth resuscitation and then took Diana to the hospital.
Molina told police that Diana had stayed with her grandmother in El Salvador when he and his wife moved to Grand Island. Molina had brought Diana to Grand Island about 10 days prior to her death. He claimed that the marks on Diana's back were there when he picked her up in El Salvador and were the result of injuries inflicted by Mrs. Molina's cousin. Molina admitted to spanking Diana with a belt each of the four times she had urinated in the bedroom, striking five or six blows each time. He denied shaking her or striking her with any object other than a belt. He also admitted to picking Diana up by her hair several days earlier.
Molina was charged with one count of first degree murder and one count of child abuse resulting in death. He pled not guilty.
Mrs. Molina testified pursuant to a plea agreement. In the early morning approximately 24 hours before Diana's death, Mrs. Molina found Molina sitting on the edge of the bed with a belt. Diana was standing on an object that looked like a bucket, and she had her arms in the air. She was naked and wet and had marks on her body from the belt. Molina told Diana not to fall asleep and threatened that if she put her arms down, he was going to hit her with the belt. Molina told his wife that he was punishing Diana because she had urinated in her crib.
Molina made Diana stand in that position for about 3 hours, during which time he hit her with the belt five times. Mrs. Molina said she told Molina to let Diana go to sleep, but he refused. When Diana fell asleep and fell off the bucket, Molina put her back on her feet in the same position. Eventually, Molina put Diana in her crib.
When Mrs. Molina woke around 10 a.m., Molina was again making Diana stand with her arms raised and threatening that if she dropped her arms, he would hit her with the belt. She remained in that position for 2½ to 3 hours. Mrs. Molina testified that she told Molina he should stop punishing Diana. Molina said Mrs. Molina should stop talking and that if she did not, he would spank Diana more. Diana spent most of the day on her feet. Molina later became angry and pulled Diana by her *717 hair, and a "bunch or a clump" of Diana's hair came out.
Around 8 p.m., Diana was allowed to drink some juice and eat an apple. She fell off the bucket, and Molina picked her up, spanked her about five times, and then placed her on top of the bucket, where she remained standing until Mrs. Molina went to bed around midnight. Mrs. Molina slept intermittently. Molina made Diana run around the room while he hit her. If she fell, he hit her repeatedly. Mrs. Molina later heard Diana screaming and saw Molina swinging Diana around and shaking her. Mrs. Molina said it sounded like Molina then picked Diana up and dropped her to the floor 10 or 20 times. She saw Molina hit Diana hard in the stomach, and Diana was unresponsive.
Before the Molinas took Diana to the hospital, Molina insisted on dressing Diana to try to hide the bruises that were all over her body. Mrs. Molina said Molina told her to say that Diana had sustained the bruises in El Salvador.
Molina testified that 2 days before Diana's death, he found that Diana had been injured and he put ice on her injuries. He thought Mrs. Molina had inflicted the injuries, and he told her that she had committed child abuse. The next day, he arrived home around midnight. Diana woke him and said she had to go to the bathroom. When he took Diana upstairs to use the bathroom, she was limping and had some new bruises. As they returned to the basement, Diana fell down the stairs. He and his wife tried to revive her, but were unsuccessful, so they took her to the hospital. Molina claimed that Mrs. Molina told him to tell the police that a cousin in El Salvador had inflicted the bruises. Molina denied that he had caused any of Diana's injuries.
The physician who treated Diana stated that her body was covered from head to toe with bruising and swelling and that her injuries were not consistent with a fall down the stairs. The injuries appeared to have been caused by blunt force trauma inflicted by a belt or similar object in the 24 or 36 hours prior to her death.
The autopsy showed that the cause of Diana's death was blunt trauma to the head with acute subdural and subarachnoid hemorrhage. The pathologist stated that the injuries could not have been sustained as the result of an accident, that they were sustained within 24 to 36 hours before Diana's death, and that they were all part of "the same beating." Some of the bruises were classified as "defensive wounds," indicating that Diana had tried to protect herself.
Mrs. Molina agreed to plead guilty to knowingly and intentionally permitting child abuse resulting in serious bodily injury, a Class III felony. In the plea agreement, she was to serve 4 to 20 years' imprisonment.
Molina was convicted of second degree murder and child abuse resulting in death. He was sentenced to consecutive terms of imprisonment of 80 years to life on each conviction. He filed a timely notice of appeal, and his initial brief was filed by trial counsel. Because Molina wished to assert that he received ineffective assistance of counsel, trial counsel moved to withdraw. This court ordered the appointment of replacement counsel, and the trial court appointed the Nebraska Commission on Public Advocacy. We affirmed Molina's convictions in Molina I.
Molina now seeks postconviction relief, alleging that he received ineffective assistance of counsel in that counsel (1) failed to object, move for a mistrial, and raise issues on appeal concerning improper closing argument by the prosecutor; (2) failed to object, request an appropriate instruction, *718 and raise on appeal issues related to intent; (3) failed to raise at trial and on appeal that Molina was subjected to double jeopardy or multiple punishments by being prosecuted for both murder and child abuse resulting in death; (4) failed to allege that the evidence was insufficient and failed to raise that claim on appeal; (5) failed to object at trial to the introduction of Molina's prior convictions and to raise the claim on appeal; (6) failed to offer at trial an edited portion of a videotaped statement given by Mrs. Molina; (7) failed to raise on appeal that the sentences were excessive and/or that Molina was subjected to multiple punishments; and (8) failed to request continuances to locate witness Maria Alvarez.
The court found no ineffective assistance of counsel related to the failure to object or move for a mistrial concerning the prosecutor's closing argument. The court found the issues of intent in the jury instructions, double jeopardy, multiple punishments for one crime, and excessiveness of the sentences had been raised on direct appeal. It found that the evidence was sufficient to convict and that failure to raise the issue on appeal did not raise a probability that the result would have been different. It found there was no evidence that Molina's prior convictions had been mentioned at trial.
The court also found counsel was not ineffective for failing to offer an edited portion of the videotaped statement given by Mrs. Molina. Molina argued the videotape would have shown inconsistencies with his wife's trial testimony. The court determined there was no need for the videotape after witnesses had been cross-examined concerning the alleged inconsistent statements.
Finally, the court found that counsel was not ineffective in failing to request a continuance to secure the testimony of Alvarez, because there was no evidence that a continuance would have been granted or that Alvarez' testimony would have affected the outcome of the trial.
The court found no merit to any of Molina's claims and overruled his motion for postconviction relief. He appeals.

ASSIGNMENTS OF ERROR
Molina claims, summarized and restated, that the court erred in overruling his motion for postconviction relief by (1) finding there was no prosecutorial misconduct in closing arguments; (2) finding that trial counsel's failure to object or move for a mistrial based on the closing arguments was not ineffective assistance of counsel; (3) finding that issues related to intent were raised on direct appeal; (4) finding that counsel was not ineffective in failing to offer an edited portion of a videotaped statement; (5) finding that there was no likelihood of prevailing on an excessive sentence claim; and (6) finding no evidence that a continuance would have been granted or that Alvarez' testimony would have given rise to a likelihood or probability of a different outcome.

ANALYSIS
A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. State v. Glover, 278 Neb. 795, 774 N.W.2d 248 (2009).

CLOSING ARGUMENTS
The court found no merit to Molina's claim that the prosecution made improper and inflammatory remarks in closing argument and that Molina's counsel should have objected or moved for a mistrial. The court found that the remarks did not prejudice Molina's right to a fair *719 trial and that counsel's decision not to object or move for a mistrial did not rise to the level of inadequate representation. The issue before the jury was the death of a child, and the prosecutor's comments were intended to question the credibility of Molina's claim that his wife was the perpetrator. The court noted that the jury was instructed more than once during the trial that the attorneys' statements were not evidence.
In arguing that the court erred, Molina cites as improper four comments made by the prosecutor during closing arguments. First, the prosecutor stated: "You know, I'm appalled, I'm appalled, ladies and gentlemen, by the cynicism of the defense in this case. They want you to buy into this story so that [Molina] can get away with murder and I hope you don't let that happen."
Second, concerning Molina's expert witness' testimony, the prosecutor stated:
[T]his is kind of ingenuous, and I think one of the cynical things about what's been done here, this whole well-if-it's-not-working-out-very-good, we'll just say these other injuries that we today decide to tell you [Mrs. Molina] did, that it happened [that Diana's] at the top of the stairs when her body shuts down. What are the odds of that happening? They are astronomical. I submit to you it's beyond the likelihood of any other event known to man that it would just happen she's at the top of the stairs close enough to the edge of the stairs, apparently, without taking a step, she just tilts over and falls all the way down.
Next, the prosecutor said:
I think what the stair fall is is the classic example of the big lie, and yeah, [Molina has] been consistent in it because he's trapped into that because he's on tape, but the big lie, if you'll remember, is a concept that's been used in different political situations around the world where you say something outrageous and you keep saying it over and over and over again, and the bigger the lie, the more outrageous what you are saying is and the more you repeat it, the more you hope people will believe it. Hope it doesn't work, but that's what this is. It's the big lie.
Finally, the prosecutor said, "[T]he poison in this case is the poison in that man's heart; it's not in some aspirin bottle."
Molina did not assign prosecutorial misconduct as error in his direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. See State v. Lotter, 278 Neb. 466, 771 N.W.2d 551 (2009). Thus, this claim is procedurally barred to the extent it argues the prosecutor made improper comments during closing argument.
Molina also argues that trial counsel was ineffective in failing to object to the prosecutor's comments or to ask for a mistrial based on the closing argument. Molina had two attorneys on direct appeal. His trial counsel filed an initial brief and then withdrew. Different counsel filed a supplemental brief. We have held that "[w]hen a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record." State v. Duncan, 278 Neb. 1006, 1014, 775 N.W.2d 922, 928 (2009). Otherwise, the issue will be procedurally barred. Id. When claims of a trial counsel's performance are procedurally barred, this court examines claims regarding trial counsel's performance only if the defendant assigns as error that appellate counsel was ineffective *720 for failing to raise trial counsel's performance. Id.
On direct appeal, Molina did not allege that trial counsel was ineffective in failing to object to the prosecutor's remarks or ask for a mistrial based on closing arguments. This claim was known to Molina at the time of the direct appeal, and it is procedurally barred.
In addition, Molina has not assigned any error to appellate counsel's performance by alleging that appellate counsel was ineffective for failing to assign error to trial counsel's performance. Molina's assigned errors related to closing arguments have no merit.

INTENT
Molina contends that the court was wrong in finding that the question of the inclusion of intent in the jury instructions was raised on direct appeal. Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. State v. Dunster, 278 Neb. 268, 769 N.W.2d 401 (2009).
Molina's argument seems to be that the jury instructions were ambiguous as to whether intent is an element of the crime of child abuse resulting in death or serious bodily injury. Molina claims that child abuse is a general intent crime and that first and second degree murder are specific intent crimes. He argues that trial counsel was ineffective in failing to object to the jury instructions concerning intent.
On direct appeal, Molina assigned as error the failure to instruct the jury on the lesser-included offenses of child abuse resulting in death. See Molina I. We concluded that the district court erred in failing to instruct the jury on the lesser-included offense of negligent child abuse. However, we found that the failure to give the instruction was not prejudicial. The jury was given the opportunity to determine whether Molina acted with or without intent, and it determined that he acted with the intent to kill. The jury could not have concluded that Molina acted without intent with respect to the child abuse charge. Error in failing to instruct the jury on the lesser-included offense was harmless, because the jury necessarily decided the factual question of intent adversely to Molina.
Molina again attempts to assign as error the jury instructions. This issue was decided on direct appeal and is now procedurally barred.
To the extent that Molina's argument can be interpreted to claim that counsel was ineffective in relation to the jury instructions, it has no merit. We concluded in Molina I that the refusal to give the instruction was not prejudicial to Molina.

VIDEOTAPED STATEMENT
Molina alleged that trial counsel was ineffective in failing to offer an edited version of a videotaped statement given by Mrs. Molina. The court determined that the videotape raised only one relevant issue: whether any inconsistency between Mrs. Molina's statements in the videotape and her testimony at trial was sufficient to convince the jury that she was the perpetrator of the crime. Any issue as to ineffective assistance of counsel, including counsel's failure to offer an edited portion of the statement, could have been raised on direct appeal.
The videotape issue was raised on direct appeal. See Molina I. We found no abuse of discretion in the trial court's refusal to receive the entire videotape into evidence. This assigned error is without merit and is procedurally barred.

*721 EXCESSIVE SENTENCES
Molina next argues that the court erred in finding that there was no likelihood he would have prevailed on an excessive sentence claim. Molina was sentenced to 80 years to life in prison for second degree murder and to 80 years to life in prison for child abuse resulting in death, to be served consecutively. He argues that imposing two consecutive life sentences in a case involving one death is excessive and an abuse of discretion.
Molina's claim concerning excessiveness of the sentences is procedurally barred because he could have raised it on direct appeal. See State v. Sepulveda, 278 Neb. 972, 775 N.W.2d 40 (2009). Any alleged ineffective assistance of counsel related to the sentences is also barred because it could have been raised by appellate counsel in the supplemental brief. See State v. Duncan, 278 Neb. 1006, 775 N.W.2d 922 (2009).
In addition, Molina has not assigned any error to appellate counsel's performance by alleging that appellate counsel was ineffective for failing to assign error to trial counsel's performance. Molina's assignment of error has no merit.

CONTINUANCE
Finally, Molina argues that the court erred in finding that counsel was not ineffective in failing to ask for a continuance to locate Alvarez. The court found no evidence that a continuance would have been granted if requested or that Alvarez' testimony would have assisted the defense or affected the outcome of the trial. We agree.
This claim is also procedurally barred. The failure to request a continuance could have been raised on direct appeal by appellate counsel. See State v. Sepulveda, supra. Also, Molina has not assigned any error to appellate counsel's performance by alleging that appellate counsel was ineffective for failing to assign error to trial counsel's performance. Molina's assignment of error has no merit.

CONCLUSION
The Nebraska Postconviction Act, Neb.Rev.Stat. § 29-3001 et seq. (Reissue 2008), provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable. State v. York, 278 Neb. 306, 770 N.W.2d 614 (2009).
Molina has not demonstrated any basis for postconviction relief. The district court was not clearly wrong in denying post-conviction relief, and its decision is affirmed.
AFFIRMED.